```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Charles Horn,                  :

        Plaintiff,             :   Case No. 2:15-cv-220

   v.                          :   JUDGE JAMES L. GRAHAM
                                   Magistrate Judge Kemp
Chad Hunt,                     :

        Defendant.             :
```

REPORT AND RECOMMENDATION AND ORDER

Plaintiff Charles Horn, an inmate at the Correctional Reception Center, filed this action under 42 U.S.C. §1983 arising from an alleged incident on October 1, 2014, involving defendant Chad Hunt. Mr. Hunt has filed a motion to dismiss and the motion has been fully briefed. For the following reasons, the Court will recommend that the motion to dismiss be granted in part and denied in part.

## I. Background

Mr. Horn's complaint, in its entirety, contains the following factual allegations, restated verbatim as follows:

1. On 10-01-14 Petitioner was involved in a verbal dispute with Defendant.

2. The dispute was due to the fact that Defendant would not wear gloves while handling exposed food.

3. Defendant told Plaintiff that he did not have to wear gloves, that he was not going to wear any, and that he did not have to follow the policies of the Ohio Department of Rehabilitation & Corrections.

4. Plaintiff informed Defendant that he was going to file a complaint against him for handling the food with no gloves.

5. Thereafter, several inmates approached Plaintiff

        and informed him that Defendant was in the prison kitchen telling inmates and staff members that Plaintiff was a snitch.

6.    Shortly thereafter, Plaintiff was involved in a fight with an inmate. The inmate warned Plaintiff that if he continued to snitch on Defendant that there were going to be more problems coming his (Plaintiff) way

## II. Legal Standard

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009).  Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts. Erickson v. Pardus, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id. It is with these standards in mind that the motion to dismiss will be decided.

### III. Analysis

Mr. Hunt has moved to dismiss the complaint on several grounds, including lack of standing, failure to exhaust administrative remedies, failure to allege a constitutional violation, and failure to allege that he acted under color of state law.

In response, Mr. Horn provides somewhat more insight into the nature of his claims. First, Mr. Horn explains that he has set forth a First Amendment retaliation claim based on Mr. Hunt's labeling him a snitch. He contends that courts have recognized both that a prisoner's verbal complaints may constitute protected conduct and that labeling a prisoner as a snitch may deter an inmate from making a complaint. Additionally, he argues that he

has stated an Eight Amendment claim because Mr. Hunt's labeling him a snitch may result in attacks against him from other prisoners violating his right to be free from cruel and unusual punishment.  He claims that he was involved in a "physical altercation" with another inmate who warned him that "more problems would come his way" if he continued to snitch on Hunt.  He explains that he did not report this altercation for fear of retaliation.  Mr. Horn also asserts that Mr. Hunt is a state actor under the public function test.  Finally, he claims that he has exhausted his available administrative remedies.  Mr. Horn has attached four exhibits to his response, including three declarations from other inmates and a copy of his informal complaint resolution form.

In reply, Mr. Hunt argues that Mr. Horn's response is untimely and should therefore be stricken.  Further, he notes that the exhibits attached to Mr. Horn's response cannot properly be considered by the Court in ruling on the motion to dismiss because they are matters outside the complaint.  Mr. Hunt also raises this issue in a separate motion to strike directed to the exhibits attached to Mr. Horn's response.  Beyond this, Mr. Hunt reiterates the arguments of his original motion with additional discussion directed to Mr. Horn's failure to state a First or Eighth Amendment claim.  Finally, Mr. Hunt contends that Mr. Horn's claim for compensatory damages must be dismissed for failure to allege physical injury in connection with his Eighth Amendment claim.

### A.  Lack of Standing

Mr. Hunt's primary argument is that Mr. Horn lacks standing to pursue his claims.  To meet the minimum constitutional standards for standing under Article III, Mr. Horn must show that (1) he has suffered an injury in fact; (2) the injury is fairly traceable to Mr. Hunt's action; and (3) it is likely that the

injury will be redressed by a favorable decision.  Smith v. Jefferson Cty. Bd. Of School Comm'rs, 641 F.3d 197, 206 (6th Cir. 2011).  The focus of Mr. Hunt's argument is that Mr. Horn has not alleged any actual injury.  As Mr. Hunt sees it, Mr. Horn was not injured by Mr. Hunt's food handling and Mr. Horn's allegedly being labeled a snitch is not an injury sufficient to confer standing.  Mr. Hunt argues that because Mr. Horn has not alleged "any physical injury as a direct result of Mr. Hunt's alleged comments," he has not alleged an injury at all.  By extension then, Mr. Hunt asserts, Mr. Horn cannot demonstrate causation or seek redress for a non-existent injury.

As explained in more detail below, one of Mr. Horn's claims is that Mr. Hunt retaliated against him for the exercise of his First Amendment rights.  "[D]eprivations of First Amendment rights are themselves injuries, apart from any mental, emotional, or physical injury that might also arise from the deprivation...."  King v. Zamiara, 788 F.3d 207, 212 (6th Cir. 2015); see also Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) ("retaliation for the exercise of constitutional rights is itself a violation of the Constitution").  This alleged deprivation is traceable directly to Mr. Hunt and it is possible that Mr. Horn could achieve redress were this case to be ultimately resolved in his favor.  See id. at 213.  Consequently, the Court will not recommend that the motion to dismiss be granted on the ground that Mr. Horn lacks standing.  For these same reasons, the Court finds unavailing Mr. Hunt's argument in support of dismissal that Mr. Horn is not entitled to compensatory damages.  See id.

     B.   <u>Failure to Exhaust Administrative Remedies</u>

Next, Mr. Hunt contends that Mr. Horn has not exhausted his administrative remedies and, therefore, the complaint must be dismissed.  Before addressing the issue of exhaustion as raised

-5-

by Mr. Hunt, however, the Court will address briefly the motion to strike.

Mr. Horn seeks to have Doc. 12-1, attached to Mr. Horn's response, stricken. Although Doc. 12-1 is reflected on the docket as one exhibit, a review of this filing indicate Mr. Horn's identification of four separate exhibits. These exhibits include three inmate declarations and an informal complaint form. The focus of Mr. Hunt's argument in his motion to strike seems to be limited to the three declarations. When considering a motion to dismiss, the Court generally is limited to a review of the matters set forth in the pleadings. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). Consequently, the Court will grant the motion to strike as it relates to the three inmate declarations.

The grievance form, however, relates to the issue of Mr. Horn's failure to exhaust. From the language of the motion to strike, Mr. Hunt does not suggest that he is seeking to foreclose Mr. Horn's attempt to demonstrate exhaustion. Consequently, the motion to strike will be denied to the extent it could be construed as relating to the informal complaint form.

Turning directly to the issue of exhaustion, the Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). However, the Supreme Court held "that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007); see also Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)("exhaustion is a non-jurisdictional affirmative defense"). Accordingly, a

plaintiff's complaint is only subject to dismissal for failure to exhaust if the allegations of the complaint demonstrate a failure to exhaust that would bar the requested relief. Jones, at 215.

Here, Mr. Hunt argues initially that Mr. Horn neither alleged exhaustion in his complaint nor attached copies of any dispositive decision related to his administrative remedies. Because failure to exhaust is an affirmative defense, Mr. Horn was not required to plead the steps he took to exhaust his administrative remedies. Jones, supra. However, in response to Mr. Hunt's motion, Mr. Horn provided a copy of an informal complaint resolution form indicating the nature of his complaint and the response thereto. He also states in his response that he requested a grievance form when he was dissatisfied with the action taken on his complaint. He explains that he requested the grievance form by way of kites sent to the inspector of institutional services but the inspector did not respond to the requests. He further explains that there is no procedure to address an institutional inspector's failure to provide a grievance form, so that the failure of the inspector to provide the requested grievance forms has resulted in the exhaustion of his available remedies. In reply, Mr. Hunt contends that this information demonstrates that Mr. Horn has not exhausted his remedies.

The prison grievance procedure is codified at Ohio Administrative Code 5120-9-31. Specifically, relevant to the circumstances here is OAC 5120-9-31(K)(2) which states, in part, as follows:

> The filing of the notification of grievance - step two:
> If the inmate is dissatisfied with the informal complaint response, or the informal complaint process has been waived, the inmate may obtain a notification of grievance form from the inspector of institutional services. ...

The PLRA requires only the exhaustion of administrative remedies as are available. The PLRA's "use of the phrase 'as are available' implies that if the prison has taken action to make its administrative remedies unavailable, the prisoner has no obligation to pursue them." Brown v. Blackwell, 2011 WL 63595, *2 (S.D. Ohio Jan. 6, 2011). "'When a prisoner makes affirmative efforts to comply with the administrative grievance process but does not succeed,' the Court 'analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" Gossard v. Warden, Madison Correctional Institution, 2015 WL 4514647, *3 (S.D. Ohio July 24, 2015), quoting Risher v. Lappin, 639 F.3d 236, 240 (6th Cir. 2011). As the Court explained in Gossard, "where the plaintiff alleges that he was denied access to a required grievance form, he need not have requested the required form from another source." Id., citing Peterson v. Cooper, 463 Fed.Appx. 528, 530 (6th Cir. 2012).

Here, Mr. Horn argues that further administrative remedies were not available to him because the institutional inspector did not provide the requested grievance forms. Ultimately, Mr. Horn will have to make a factual showing that he was prevented from pursuing the grievance procedure. At the pleading stage, however, the Court will not consider the exhaustion issue to be dispositive. Consequently, the motion to dismiss will not be granted on the ground that Mr. Horn has failed to exhaust his administrative remedies.

    C.   Failure to Allege Mr. Hunt is a State Actor

Mr. Hunt also argues that he is not a state actor for purposes of 42 U.S.C. §1983 because he is an employee of a private food service company hired by Ohio prisons. This argument has been rejected by other courts that have analogized the role of a private food service company to that of a private

entity providing medical services.  For example, in Ward v. Kentucky State Reformatory, 2009 WL 2342724, *3, n.3 (W.D. Ky. July 28, 2009), the court presumed, for purposes of initial review, that Aramark and two of its employees were state actors.  The court relied on Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993), where the Court of Appeals stated, "it is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under §1983 as one acting under color of state law."  Similarly, in Turner v. Welkal, 2014 WL 347815, *4, n. 3 (M.D. Tenn. Jan. 31, 2014), the Court, in addressing a motion to dismiss, considered food service provider ABL and its employees to be state actors subject to liability under §1983 "because the obligation to provide service to individuals in state custody - traditionally a state function - has been contractually delegated to them."  That court relied on West v. Atkins, 487 U.S. 42, 56 (1988), a United States Supreme Court decision holding that a private medical provider contracted to provide medical care to prisoners is a state actor for purposes of §1983.

Courts outside the Sixth Circuit have reached the same conclusion.  In McCullum v. City of Philadelphia, 1999 WL 493696, (E.D. Pa. July 13, 1999), the court explained:

> The function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state.  Providing food service, like medical care, to those incarcerated people is one part of the government function of incarceration.  Thus, the City of Philadelphia has a duty to provide food service to inmates housed at [the prison].  Aramark entered into a contract with the City of Philadelphia to provide such food services at [the prison]...  The court finds that Aramark acted under color of state law for purposes of 1983 by performing the traditional government function of providing food service at a prison.

Id. at *3 (citations omitted).  Here, Mr. Hunt contends that his employer, Aramark, is a private company hired to provide food-related services to Ohio prisons.  Under this circumstance, the Court cannot conclude at this stage of the case that Mr. Hunt is not a state actor for §1983 purposes.  Consequently, the motion to dismiss will not be granted on the ground that Mr. Hunt cannot be considered a state actor.

D. Failure to Allege a Constitutional Violation

1. First Amendment Claim

Mr. Hunt's final argument in support of his motion to dismiss is that Mr. Horn has failed to allege a constitutional violation.  As Mr. Horn has explained, one of the claims he alleges is that his First Amendment rights were violated when he was retaliated against for threatening to report Mr. Hunt for not wearing gloves while serving food, a violation of prison regulations.  In his view, this retaliation took the form of Mr. Hunt's labeling him a snitch, resulting in an altercation with another inmate.  To assert a First Amendment retaliation claim, Mr. Horn must allege, (1) that he engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by the inmate's protected conduct.  Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999); Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000).

Turning to the first element of a retaliation claim, Mr. Horn contends that his oral complaint to Mr. Hunt constitutes protected conduct.  Although it is not clear, there is some support for Mr. Horn's position that verbal complaints by a prisoner may, under certain circumstances, constitute protected conduct.  McCaskill v. Dettloff, 2012 WL 4177034, *3 (E.D. Mich. July 13, 2012), citing Davis v. Straub, 2009 WL 4908433 (W.D.

Mich. Dec. 11, 2009); King v. Ditter, 432 F.Supp.2d 813, 818-19 (W.D. Wis. May 30, 2006).  As the Court of Appeals explained in Clark v. Johnson, 413 Fed. Appx 804, 813 (6th Cir.  2011), the grievance does not necessarily have to be formal to be protected, the issue is whether the grievance, regardless of form, is frivolous.  Id. ("The problem ... is not that [the] complaint was informally made, but that it has not been shown to have had any merit").

The Court of Appeals has noted that "[t]he Supreme Court has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'"  Jones v. Caruso, 569 F.3d 258, 267 (6th Cir. 2009), quoting Pell v. Procunier, 417 U.S. 817, 832 (1974).  Consequently, courts have recognized that an inmate's exercise of First Amendment rights is not limited solely to filing grievances or accessing the courts.

Accordingly, courts have acknowledged that prisoners "retain, in a general sense, a right to criticize prison officials," Freeman v. Texas Dep't of Criminal Justice, 369 F.3d 854, 864 (5th Cir. 2004), and "a prisoner's oral and written complaints to a warden about the misconduct of the prisoner's job supervisor are protected speech under the First Amendment." Davis v. Straub, supra, citing King v. Ditter, 432 F.Supp.2d at 818-19.  Moreover, there may be no difference "between retaliating against a person for filing a grievance, and retaliating for threatening to file one." Carter v. Dolce, 647 F.Supp.2d 826, 834 (E.D. Mich. 2009).  Rather, "[o]nce a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right." Id.

Here, the Court construes Mr. Horn's claim as asserting that Mr. Hunt retaliated against him for expressing his intention to file a grievance over Mr. Hunt's alleged failure to comply with food handling regulations.  As such, it seems reasonably to fall within the parameters outlined above.  Mr. Hunt has not suggested the issue of frivolousness and, accordingly, the Court will not address it.

With respect to the second element of a retaliation claim, adverse action, Mr. Horn alleges that Mr. Hunt labeled him a snitch.  In considering whether an action would be capable of deterring a person of ordinary firmness, the Court of Appeals noted that "*[a]ctual* deterrence need not be shown."  Hill v. Lappin, 630 F.3d 468, 472 (6th Cir. 2010), quoting Harbin-Bey v. Rutter, 420 F.3d 571, 579 (6th Cir. 2005) (emphasis in original) (citation omitted).  "Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct."  Hill, 630 F.3d at 472 (citation omitted).  The Court of Appeals has emphasized that "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions...."  Thaddeus-X, 175 F.3d at 398.  Further, as previously noted, the actions threatened do not need to violate constitutional rights; rather, the "retaliation for the exercise of constitutional rights is itself a violation of the Constitution."  Hill, 630 F.3d at 473, quoting Thaddeus-X, 175 F.3d at 394.

Labeling an inmate a snitch in the presence of other inmates has been found to constitute adverse action. Crum v. Wilkinson, 2006 WL 64607, *4 (S.D. Ohio Jan. 11, 2006)("[l]abeling plaintiff a snitch in the presence of other inmates is certainly likely to deter a person of ordinary firmness from exercising the right at

stake"). Consequently, the Court finds that Mr. Horn has sufficiently pled the second element of a retaliation claim.

The third element of a retaliation claim, that the adverse action was taken because of the protected conduct, is a causation inquiry focusing on Mr. Hunt's motive. Thomas v. Eby, F.3d 434, 441 (6th Cir. 2007). Here, Mr. Horn contends that later the same day, he was approached by other inmates informing him that Mr. Hunt had labeled him a snitch. Shortly thereafter, he was involved in an altercation with an inmate and was warned that he might encounter additional problems if he continued to snitch on Mr. Hunt. The Court finds these allegations sufficient to allow Mr. Horn's retaliation claim to proceed beyond the pleading stage. Consequently, the Court will recommend that the motion to dismiss be denied as to Mr. Horn's First Amendment retaliation claim.

## 2. Eighth Amendment Claim

Turning to Mr. Horn's Eighth Amendment claim, prison officials "have an affirmative duty to protect inmates from violence perpetrated by other prisoners." Wilson v. Yaklich, 148 F.3d 596, 600 (6th Cir. 1998). In order to state an Eighth Amendment claim, a plaintiff must allege facts showing that defendant's conduct amounted to "deliberate indifference" to a known risk of harm to the plaintiff. Farmer v. Brennan, 511 U.S. 825, 828 (1994). Labeling an inmate as a snitch may constitute deliberate indifference to the safety of the inmate. Sapp v. Edington, 2015 WL 4620566, *2 (E.D. Mich. July 31, 2015), citing Comstock v. McCrary, 273 F.3d 693, 699 n.2 (6th Cir. 2001). However, the Court of Appeals has required that a plaintiff allege that he suffered physical harm as a result of being labeled a snitch. Thompson v. Mich. Dept. of Corrections, 25 Fed. Appx. 357, 359 (6th Cir. 2002)(affirming dismissal where claim that plaintiff was endangered by being labeled a snitch was

unsupported by an allegation of harm); see also Sapp, supra (citing cases).

Mr. Horn does not assert that he suffered any physical harm as a result of Mr. Hunt's alleged labeling him as a snitch. He merely states that he was involved in a "physical altercation" or a "fight" with another inmate inside the prison restroom gym. Such conclusory assertions, standing alone, are insufficient to allege physical harm. Consequently, the Court will recommend that the motion to dismiss be granted as to Mr. Horn's Eighth Amendment claim.

## IV. Recommendation and Order

For the reasons stated above, the Court recommends that the motion to dismiss (Doc. 9) be granted in part and denied in part. The motion to strike (Doc. 16) is granted in part to the extent that it seeks to have three inmate declarations stricken from the exhibit attached to plaintiff's response.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and

Recommendation <u>de</u> <u>novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge